**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**GAINESVILLE DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville
JUL 17 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**KATHERYN MARI WRIGHT,**

Plaintiff,

v.

**ALLIANT CREDIT UNION,**

Defendant.

Civil Action No. 2:26-CV-0237

# COMPLAINT

Pro se Plaintiff, Katheryn Mari Wright ("Plaintiff"), for her Complaint against Defendant Alliant Credit Union ("Defendant"), alleges as follows:

## INTRODUCTION

Plaintiff, Katheryn Mari Wright ("Plaintiff"), brings this action against Defendant Alliant Credit Union ("Defendant") seeking damages and declaratory relief arising from Defendant's decision to fund and enforce a Retail Installment Contract after receiving actual notice that Plaintiff had rejected acceptance of the underlying recreational vehicle ("RV") and instructed Defendant not to fund the transaction.

This action arises from Defendant's indirect financing of Plaintiff's purchase of an RV. As a condition of obtaining the loan, Defendant required Plaintiff to apply for membership in Defendant's credit union and to satisfy Defendant's membership requirements before financing would be approved.

After execution of the sales documents, Plaintiff discovered that the RV materially differed from the representations made during the negotiations. Within approximately two business hours after taking possession of the vehicle, Plaintiff rejected acceptance, returned the vehicle to the selling dealer, and repeatedly notified Defendant—both orally and in writing—that Plaintiff rejected the transaction and expressly instructed Defendant not to fund the Retail Installment Contract.

Defendant acknowledged Plaintiff's dispute and represented that the Retail Installment Contract would be flagged upon receipt from the dealer. Despite possessing actual notice that Plaintiff had rejected the transaction before funding, Defendant nevertheless elected to purchase and fund the Retail Installment Contract.

Thereafter, Defendant conducted an internal investigation that relied primarily upon information supplied by the selling dealer while rejecting or disregarding Plaintiff's repeated communications and supporting evidence. Defendant ultimately concluded that Plaintiff remained legally obligated under the Retail Installment Contract, repossessed the RV from the dealer's premises, furnished adverse credit information concerning Plaintiff, and asserted that Plaintiff remains liable for an alleged deficiency balance.

Plaintiff repeatedly requested that Defendant substantiate its claimed deficiency through appropriate legal process. Defendant instead maintained that the alleged deficiency is "due and owing" and stated that there was "no need for Alliant to file any claim in the court system."

This action seeks a determination of the parties' respective rights arising from Defendant's decision to fund the Retail Installment Contract after receiving actual notice of Plaintiff's rejection of the underlying transaction and seeks compensation for the financial losses, credit damage, and other injuries Plaintiff alleges resulted from Defendant's subsequent enforcement of that transaction.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a).

2. Plaintiff is a citizen of Tennessee.

3. Defendant Alliant Credit Union is a federally chartered credit union with its principal office located in Chicago, Illinois.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the Gainesville Division of the Northern District of Georgia pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

6. The Retail Installment Contract was executed in this District.

7. Plaintiff's rejection of the transaction occurred in this District.

8. Defendant accepted the assignment of the contract originating in this District.

9. Defendant purposefully conducted business within this District through indirect automobile financing and the enforcement of retail installment contracts originating in Georgia.

## PARTIES

10. Plaintiff Katheryn Mari Wright is an adult citizen of Tennessee residing at 6230 Foxboro Drive, Apartment 104, Chattanooga, Tennessee 37421.

11. Defendant Alliant Credit Union is a state-chartered credit union headquartered at 11545 West Touhy Avenue, Chicago, Illinois.

12. To serve legal documents on Alliant Credit Union, the registered agent on file with the State of Illinois is Meredith Ritchie, and the designated address is 11545 W Touhy Avenue, Chicago, IL 60666.

## FACTUAL ALLEGATIONS

13. At or around 4:00 pm, on Saturday, June 28, 2025, Plaintiff executed documents relating to the purchase of a 2023 Thor Scope 18M recreational vehicle. **Exhibit A**

14. The transaction included the indirect loan financed through Defendant Alliant Credit Union.

15. Defendant required the Plaintiff to donate $5.00 to Defendant's Charity organization, Alliant Credit Union Foundation, in order to be eligible to obtain membership in the credit union.

16. Defendant required membership in the credit union in order to obtain the indirect loan.

17. Plaintiff agreed to the $5.00 donation and accepted the full membership as solicited.

18. Plaintiff accepted the financing as offered by the Defendant.

19. Plaintiff agreed to a vehicle sales price of $83,914.72.

20. Plaintiff agreed to an interest rate of 8.34%.

21. Plaintiff agreed to pay $1,499 for an Orientation inspection of the RV to occur immediately following the execution of the contract.

22. Plaintiff paid a total down payment of $9,200. **Exhibit B**

23. At or around 5:00 pm, after signing the sales agreement, Plaintiff was instructed to take the RV home and inspect it, as the dealer stated that they were unable to provide the Orientation inspection.

24. Plaintiff relied upon representations that the vehicle was complete and operational, except for the need to replace the awning motor.

25. On Sunday, June 29, 2025, Plaintiff discovered numerous defects and discrepancies that materially differed from the representations made during the negotiations.

26. At 9:15 am on Monday, June 30, 2025, Plaintiff called Defendant to provide notice that she did not want the loan funded because she was rejecting acceptance of the RV. In the call:

    a. Plaintiff requested to speak to the Defendant's legal department;

b. Defendant denied the Plaintiff access to the legal department and stated that the legal department would only speak to the dealer because the loan was indirect rather than direct.

c. Defendant stated that the agreement had not yet arrived from the dealer.

d. Plaintiff informed Defendant that she did not want the loan funded because she was rejecting the RV due to discrepancies in the dealer's representations.

e. Plaintiff stated that she believed the dealer had breached the contract by failing to provide the Orientation/ Inspection, possibly in an effort to commit fraud, as the RV was not in the negotiated condition.

27. At or around 10 am, on that same day, Plaintiff and a witness returned the RV to the dealer.

28. Plaintiff returned the RV within two business hours of having possession for the purpose of inspection.

29. Plaintiff returned the RV with approximately 10 miles added to the odometer.

30. Plaintiff told the dealer not to send the loan agreement to the Defendant until the RV was operational in the negotiated condition.

31. Plaintiff stated that she was willing to consider another Class B RV on the lot because she urgently needed a daily-driver vehicle.

32. Dealer declined to cure the RV to the negotiated condition.

33. Dealer declined to offer any other Class B RV as an immediate solution.

34. Plaintiff left the RV in the dealer's possession.

35. At 10:12 am on the same day, Plaintiff sent dealer a text message stating that she needed to be on record saying to cancel the financing due to the circumstances, and Plaintiff offered to consider another unit with less issues. **Exhibit C**

36. At 11:39 am on the same day, Plaintiff called the dealer and asked that her down payment check be returned to her.

37. Dealer declined.

38. At 3:14 pm on the same day, Plaintiff called Defendant again. In this call;

   a. Plaintiff again informed Defendant that she did not want the loan funded due to the discrepancies in the representations made prior to the execution of the agreement.

   b. Defendant again stated that their legal department could only speak to the RV dealer because Plaintiff's loan was indirect rather than direct.

   c. Defendant assured the Plaintiff that when the agreement arrived from the dealer, it would be flagged and would not be funded.

   d. Plaintiff requested and obtained the legal department's email address.

39. On July 1, 2025, at 10:28 am, Plaintiff sent the dealer a text message requesting that the $500 down payment be refunded to her debit card. **Exhibit D**

40. On the same day at 2:49 pm, Plaintiff emailed Defendant a written notice regarding the situation. **Exhibit E**

41. On July 3, 2025, at 12:11 pm, Plaintiff called Defendant to obtain a written statement confirming that the loan agreement was terminated. In the call:

a. Plaintiff requested to keep the loan terms with Defendant, but find a more reputable dealer from which to purchase the RV.

b. Defendant declined.

c. Defendant stated that the loan was scheduled to fund despite Plaintiff's rejection.

d. Defendant stated that Plaintiff had signed the agreement and that there was nothing Defendant could do.

e. Plaintiff stated that if the lender funded the loan, the matter would have to be litigated.

f. Defendant stated that the dealer reported the issue to be the awning motor and that the awning motor had been fixed.

42. At 1:13 pm on the same day, Plaintiff received a text message from the dealer stating that the awning motor had *not* been repaired, but that Plaintiff could pick up the RV as Plaintiff's current vehicle was not mechanically sound and the awning repair would be made later. **Exhibit F**

43. At 2:54 pm on the same day, Plaintiff called Defendant and offered the dealer's text message as evidence that the dealer was also deceiving Defendant. In the call:

a. Defendant stated that discrepancy in the dealer's statements would be noted on the account.

b. Defendant referenced frequent callers complaining about RV dealers.

c. Defendant stated that if they get enough complaints about a dealer, they will meet with that dealer and potentially cut them off from funding.

d. Defendant's representative stated that he is a direct loan representative and that's all he does.

e. Plaintiff asked the Defendant's representative if all her calls have been documented on this matter.

f. Defendant stated that all phone calls are recorded.

44. On or around July 14, 2025, Plaintiff received a letter from the Defendant, wherein the Defendant asserted unilateral authority over the sales agreement and adjusted the interest rate from 8.34% to 7.59%. **Exhibit G**

45. On or around July 20, 2025, Plaintiff submitted complaints to:

a. The Federal Trade Commission (FTC), report number 190319024; **Exhibit H**

b. The Consumer Financial Protection Bureau (CFPB), complaint numbers 250720-22476566, **Exhibit I**, 250924-24368175, **Exhibit J**;

c. The Illinois Department of Financial and Professional Regulation (IDFPR), complaint number 2025-321, **Exhibit K**;

d. and

e. The Illinois Attorney General's Office (IAG) complaint number 2025-CONSC-00213159, **Exhibit L**.

46. Defendant responded to the inquiries from the regulatory industry by stating the following:

(I) Response dated July 30, 2025, to the CFPB, complaint 250720-22476566: **Exhibit M**

a. Defendant has conducted an investigation;

b. Defendant is not in a position to take sides; and

c. Plaintiff and dealer need to work out their differences.

(II) Response dated August 25, 2025, to the IDFPR, complaint 2025-321: **Exhibit N**

a. Terms of the contract are in full force from the time that they are signed by a consumer;

b. The written agreement was superseded by an oral agreement made either before or after signing the contract;

c. Dealer stated that Plaintiff agreed to do orientation/inspection on Monday, June 30, 2025.

d. Dealer recorded a call with the Plaintiff on June, 28, 2025, in which Plaintiff agreed to forgo the formal delivery process and return on Monday, June 30, 2025, for delivery.

e. Dealer stated that the RV was returned, with Plaintiff hinting at purchasing a larger unit and asking the dealer to put the deal on hold; the dealer declined.

f. On June 23, 2025, Plaintiff agreed to a delivery date of 6/30/25 at which time the paperwork would be completed; however, Plaintiff requested to take the unit "by the weekend" to go camping on 6/28/25.

(III) Response dated September 22, 2025, to the office of the IAG, complaint 2025-CONSC-00213159: **Exhibit O**

a. Defendant had thoroughly investigated multiple complaints submitted by the Plaintiff;

b. Defendant could find no evidence of fraud or a breach of contract;

c. Plaintiff is legally bound to the terms and conditions of the contract.

(IV) Response dated October 21, 2025, to the CFPB, complaint 250924-24368175: **Exhibit P**

a. The contract was legally binding at the moment the Plaintiff signed it;

b. There was no fraud committed;

c. Plaintiff willingly agreed to purchase the RV and to the terms and conditions;

d. The RV is scheduled for repossession due to non-payment;

e. A daily storage fee may be added to the loan balance.

47. On August 26, 2025, Plaintiff's attorney sent a Cease and Desist Letter to Defendant. **Exhibit Q**

48. On October 28, 2025, Defendant notified Plaintiff's attorney that the RV had been repossessed from the dealer's premises. **Exhibit R**

49. On November 2, 2025, Plaintiff notified the Defendant that she no longer had legal representation and provided her new mailing address. **Exhibit S**

50. On December 22, 2025, Defendant mailed the Plaintiff a Deficiency Collection Letter stating that the Plaintiff's failure to comply will result in Defendant's collection through other channels, including legal options. **Exhibit T**

51. On January, 5, 2026, Plaintiff mailed a certified demand letter requiring the Defendant to file their deficiency claim within 30 days, or Plaintiff would file the enclosed documents, including a rough draft complaint and corresponding evidence. **Exhibit U**

52. On January 22, 2026, Principal Attorney Anelle Sanchez sent the Plaintiff an email requesting a phone call to discuss the documents received from Plaintiff. **Exhibit V**

53. On January 25, 2026, Plaintiff replied that she was available any time on Mondays. **Exhibit W**

54. On January 30, 2026, Attorney Sanchez responded and requested that a thirty-minute phone call be scheduled. **Exhibit X**

55. On February 1, 2026, Plaintiff replied that she would need an itinerary for a thirty-minute meeting because Defendant would not be given the opportunity to conduct a deposition. **Exhibit Y**

56. On February 2, 2026, Attorney Sanchez responded that the time was intended to ensure sufficient opportunity for discussion with John Brom, Alliant's Deputy General Counsel, on the line to understand the Plaintiff's concerns and identify the appropriate internal teams to best assist in resolving the matter. **Exhibit Z**

57. On February 4, 2026, Plaintiff replied to Attorney Sanchez, expressing her shock that Defendant is unclear on the issues or unsure which internal teams to consult, given Defendant's deliberate and clear intentions stated in communications to the regulatory industry. **Exhibit A1**

58. On February 22, 2026, Plaintiff emailed Attorney Sanchez to notify her of the undue hardship Plaintiff was experiencing and to request a date or date range by which Defendant will file the deficiency. **Exhibit B1**

59. On February 25, 2026, Attorney Sanchez replied that all steps, claims, etc., will be taken in accordance with applicable law and that Defendant does not currently have a timeframe to provide. **Exhibit C1**

60. On March 23, 2026, Plaintiff emailed Attorney Sanchez to again expedite the filing of the deficiency. **Exhibit D1**

61. On March 31, 2026, Attorney Sanchez responded stating that the deficiency balance is currently due and owing and there is no need for Defendant to file any claim in the court system. **Exhibit E1**

62. On April 9, 2026, Plaintiff replied to Attorney Sanchez, citing 15 U.S.C. § 1692g, which gives consumers the right to demand validation of a debt. **Exhibit F1**

# CLAIMS FOR RELIEF

# COUNT I

### VIOLATION OF GEORGIA'S UNIFORM COMMERCIAL CODE

**(Revocation of Acceptance - O.C.G.A. § 11-2-608 and 11-2-711)**

63. Plaintiff incorporates by paragraphs 1-62.

64. The RV at issue is 'goods' subject to Georgia's Uniform Commercial Code, Title 11, Article 2 (Sales).

65. Under O.C.G.A. § 11-2-608 (UCC § 2-608), a buyer may revoke acceptance of goods whose nonconformity substantially impairs their value if the buyer accepted the goods on the reasonable assumption that the nonconformity would be cured and it has not been seasonably cured, or if acceptance was reasonably induced without discovery of such nonconformity.

66. Plaintiff executed the contract for the RV on the assurance that she would receive the contracted-for $1,499 Orientation inspection immediately following execution of the contract, and that the vehicle was in the represented condition except for the awning motor.

67. Plaintiff informed Defendant that after the contract was executed, the dealer said they could not perform the Orientation inspection, and that the RV was in perfect condition except for the awning motor needing to be replaced.

68. Plaintiff's rejection was lawful because:

a. The RV materially differed from the condition and characteristics represented during the negotiations;

b. The dealer failed to perform the Orientation inspection, inducing the difficulty of discovery, and subsequently provided assurances of conformity, thereby preventing discovery of the material nonconformities;

c. The nonconformities substantially impaired the value of the RV;

d. Plaintiff returned the recreational vehicle to the dealer with approximately ten additional miles on the odometer.

e. Plaintiff had possession for two business hours, or only long enough to inspect it; and

f. Plaintiff provided notice of her rejection to the dealer and the Defendant within approximately two business hours after taking possession of the RV.

69. Before Defendant funded the Retail Installment Contract, Plaintiff repeatedly notified Defendant, both orally and in writing, that:

a. Plaintiff had rejected acceptance of the RV;

b. Plaintiff had returned the RV to the selling dealer;

c. Plaintiff believed the dealer had materially misrepresented the condition of the RV, failed to perform the Orientation, and prevented Plaintiff from conducting the agreed-upon inspection; and

d. Defendant should not fund the transaction.

70. Plaintiff further offered Defendant documentary evidence supporting her position, including evidence of inconsistencies in the dealer's representations and communications to the Plaintiff, and to the Defendant, regarding the condition of the RV.

71. Defendant had acknowledged Plaintiff's dispute and represented that the Retail Installment Contract would be flagged upon receipt from the dealer and would not be funded.

72. Plaintiff does not allege that Defendant was the seller of the RV or that Defendant itself owed the statutory obligations imposed upon a seller under O.C.G.A. §§ 11-2-608 and 11-2-711.

73. Rather, Plaintiff alleges that Defendant knowingly elected to finance and enforce the transaction after receiving actual notice that Plaintiff had already exercised her statutory rights arising from the underlying sales transaction.

74. By knowingly funding the Retail Installment Contract after receiving actual notice of Plaintiff's rejection, Defendant enabled enforcement of a transaction that Plaintiff had already repudiated, acquired rights under a transaction Defendant knew was disputed, and substantially interfered with Plaintiff's ability to obtain the benefit of her statutory remedies against the seller.

75. Had Defendant honored Plaintiff's repeated notices and declined to fund the Retail Installment Contract, Defendant would not have acquired the contract, would not have asserted rights arising from that contract, would not have repossessed the collateral, would not have asserted a deficiency balance against Plaintiff, and Plaintiff would not have suffered the financial, credit-related, and consequential damages alleged herein.

76. Plaintiff's revocation of acceptance was timely, proper, and effective under Georgia law. Upon revocation, Plaintiff had no further obligations under the Retail Installment Contract, and Defendant had no right to fund or enforce the contract.

77. Defendant's decision to fund and enforce the Retail Installment Contract after receiving notice of Plaintiff's valid revocation of acceptance violates Georgia's UCC and constitutes an interference with Plaintiff's statutory rights.

78. As a direct and proximate result, Plaintiff has suffered damages including loss of her down payment, credit damage, and financial hardship.

## COUNT II

## BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**O.C.G.A. §§ 11-1-304 and 13-4-20**

79. Plaintiff incorporates paragraphs 1-78.

80. Plaintiff entered into a contractual relationship with Defendant by applying for and accepting membership in Defendant's credit union.

81. Plaintiff executed Defendant's membership application and agreed to be bound by Defendant's bylaws, rules, and regulations, thereby establishing a contractual relationship.

82. Defendant's contractual obligation to the Plaintiff occurred before Plaintiff could become eligible for the loan.

83. Defendant's Membership Enrollment Agreement required Plaintiff to open an account and subscribe for and maintain at least one share ($5.00), with the account opening

constituting a contract between Defendant and Plaintiff, subject to state and federal laws and the Uniform Contracts Code.

84. After entering into the membership contract, Plaintiff accepted Defendant's loan offer contained within the Retail Installment Contract, establishing the terms of the loan to include the Holder Rule, which states, in part:

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."

85. Defendant's use and abuse of its discretionary power pertaining to funding and enforcing the rejected sales agreement enabled Defendant to preemptively self-deliberate and adjudicate liability found within the Holder Rule.

86. By soliciting Plaintiff's membership and accepting Plaintiff as a member, Defendant created the reasonable expectation that Plaintiff would receive the benefits, protections, and member services offered by the credit union to all its members, in accordance with its governing documents and applicable law.

87. Defendant did not disclose that members obtaining financing through Defendant's indirect lending program would be denied direct access to Defendant's legal department or would otherwise receive materially different access to Defendant's dispute-resolution process than members obtaining direct loans.

88. Instead, Plaintiff first learned of those limitations only after notifying Defendant that she had rejected the RV and requesting assistance from Defendant's legal department, at which time Defendant informed Plaintiff that its legal department would communicate only with the dealer because the loan originated as an indirect loan.

89. Defendant's failure to disclose those material limitations deprived Plaintiff of information necessary to make an informed decision regarding Defendant's membership and financing program and frustrated Plaintiff's reasonable contractual expectations concerning the services and protections available to Defendant's members.

90. Every contract governed by Georgia law imposes an obligation that the parties perform and enforce their contractual duties in good faith. O.C.G.A. § 11-1-304.

91. Likewise, Georgia law recognizes that neither party may exercise contractual rights in a manner that unfairly deprives the other of the benefits reasonably expected under the agreement.

92. Plaintiff fully performed all obligations required of her until she discovered that the RV materially differed from the representations made during the sales transaction.

93. Upon discovering those material discrepancies, Plaintiff promptly exercised her legal right to reject the RV.

94. Defendant acknowledged Plaintiff's dispute and represented that the Retail Installment Contract would be flagged upon receipt and would not be funded.

95. Despite those representations and despite having actual knowledge that Plaintiff had rejected the transaction before funding, Defendant elected to purchase and fund the Retail Installment Contract.

96. Following funding, Defendant continued to enforce the transaction by, among other things:

a. Refusing to recognize Plaintiff's timely rejection of the RV;

b. Restricting Plaintiff's access to Defendant's legal department and dispute-resolution process because the loan originated as an indirect loan;

c. Excluding Plaintiff from meaningful participation in Defendant's internal investigation while accepting the dealer's version of disputed events;

d. Adopting the dealer's factual assertions despite documentary evidence submitted by Plaintiff;

e. Refusing to fairly consider evidence presented by Plaintiff;

f. Initially asserting that Defendant would not fund, then asserting Defendant lacked authority to refrain from funding, then subsequently exercising unilateral authority to modify the Retail Installment Contract by reducing the interest rate;

g. Declining Plaintiff's offer to keep the terms of the loan agreement, but purchase from a more reputable dealer.

h. Repossessing the RV;

i. Furnishing adverse credit information concerning Plaintiff;

j. Asserting that Plaintiff remained legally obligated under the Retail Installment Contract; and

k. Seeking to recover an alleged deficiency balance arising from a transaction Defendant knowingly funded after receiving Plaintiff's notice of rejection.

l. Declining to file the deficiency claim against Plaintiff and have the matter adjudicated for verification and validation of standing to collect.

97. Defendant's conduct deprived Plaintiff of the benefits she reasonably expected to receive as both a member of Defendant's credit union and subsequently, as a borrower, including fair treatment, honest communications, meaningful access to Defendant's member services, and the good-faith administration of Defendant's contractual rights within both agreements, after receiving notice that the underlying sales transaction had been rejected before funding.

98. Rather than Defendant exercising its contractual rights honestly, fairly, and in good faith, Defendant elected to prioritize its own financial interests by purchasing and enforcing a transaction it knew Plaintiff had already disputed, while simultaneously withholding the member services and dispute-resolution access Plaintiff reasonably expected to receive as a credit union member.

99. As a direct and proximate result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered financial losses, consequential damages, injury to her credit reputation and financial standing, increased borrowing costs, emotional distress to the extent recoverable under applicable law, and all other damages alleged in this Complaint.

## COUNT III

## WRONGFUL REPOSSESSION AND CONVERSION

**(Georgia Law)**

100. Plaintiff incorporates paragraphs 1-99.

101. Defendant repossessed the RV from the dealer's premises on or around October 28, 2025.

102. Under Georgia law (O.C.G.A. Title 11, Article 9), a secured party may repossess collateral only after default by the debtor.

103. Plaintiff was not in default because she validly revoked acceptance of the RV before Defendant funded the contract, and therefore had no obligation under the Retail Installment Contract.

104. Defendant's repossession of the RV was wrongful because Defendant had no valid security interest in the vehicle and Plaintiff was not in default.

105. Defendant's wrongful repossession constitutes conversion under Georgia law, as Defendant exercised unauthorized control over property without legal justification.

106. As a direct and proximate result of Defendant's wrongful repossession, Plaintiff has suffered damages including loss of use of the down payment, loss of the benefit of her bargain, and emotional distress.

## COUNT IV

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (15 U.S.C. § 1681s-2)

107. Plaintiff incorporates paragraphs 1-106.

108. Defendant is a 'furnisher of information' within the meaning of 15 U.S.C. § 1681s-2.

109. Under 15 U.S.C. § 1681s-2(a)(1)(A), a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

110. Defendant furnished adverse credit information to consumer reporting agencies concerning Plaintiff despite having actual knowledge that Plaintiff had rejected the transaction, that the underlying contract was disputed, and that there was a substantial question regarding Plaintiff's obligation under the contract.

111. Under 15 U.S.C. § 1681s-2(a)(3), when a consumer disputes information, a furnisher cannot report such information without noting that it is disputed by the consumer.

112. Defendant failed to note that the information it furnished was disputed by Plaintiff, despite Plaintiff's repeated communications disputing the debt and the contract.

113. Defendant's furnishing of inaccurate and/or incomplete credit information was willful or, at minimum, negligent.

114. As a direct and proximate result of Defendant's violation of the FCRA, Plaintiff has suffered actual damages including damage to her credit rating, inability to obtain credit, and emotional distress.

115. Plaintiff is entitled to actual damages, statutory damages, punitive damages (if willful), attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V

## VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT

**(O.C.G.A. § 10-1-390 et seq.)**

116. Plaintiff incorporates paragraphs 1-115.

117. The Georgia Fair Business Practices Act ('GFBPA'), O.C.G.A. § 10-1-390 et seq., protects consumers from unfair or deceptive practices in the conduct of trade or commerce.

118. Defendant engaged in unfair and deceptive practices by:

a. not providing a full disclosure on limited indirect loan service access;

b. assuring Plaintiff that the Retail Installment Contract would be flagged and not funded, then funding it anyway;

c. conducting a one-sided investigation that disregarded Plaintiff's evidence and communications;

d. misrepresenting that Plaintiff was bound by the contract despite receiving notice of valid revocation; and

e. asserting a deficiency is 'due and owing' without providing proper validation or legal process.

119. Defendant's conduct caused confusion and misunderstanding regarding Plaintiff's rights and obligations, and misrepresented the legal status of the claimed debt.

120. Defendant's unfair and deceptive practices occurred in connection with a consumer transaction (the financing of a personal-use RV) in Georgia.

121. As a direct and proximate result of Defendant's violations of the GFBPA, Plaintiff has suffered actual damages.

122. Plaintiff is entitled to equitable relief, actual damages, and attorneys' fees pursuant to O.C.G.A. § 10-1-399.

## DAMAGES

123. Plaintiff incorporates paragraphs 1-122.

124. As a direct, foreseeable, and proximate result of Defendant's decision to purchase, fund, and thereafter enforce the Retail Installment Contract after receiving actual notice that Plaintiff had rejected acceptance of the underlying RV transaction and expressly instructed Defendant not to fund the loan, Plaintiff has sustained substantial economic losses, consequential damages, injury to her credit reputation and financial standing, increased borrowing costs, loss of financial opportunities, non-economic damages, and other losses recoverable under applicable law.

125. The damages alleged herein were the natural and foreseeable consequence of Defendant's conduct and would not have occurred had Defendant honored Plaintiff's timely notice of rejection and declined to acquire and enforce the disputed Retail Installment Contract.

126. Instead, Defendant knowingly elected to proceed with funding despite its prior knowledge of Plaintiff's rejection, thereafter asserting contractual rights arising from the disputed transaction, repossessing the collateral, furnishing adverse credit information concerning Plaintiff, and attempting to impose liability for an alleged deficiency balance.

127. At all times relevant to this action, Plaintiff was employed as an over-the-road team truck driver working approximately twelve-hour shifts from 7:00 a.m. until 7:00 p.m., Tuesday through Saturday. Because Plaintiff drove as part of a two-person team operation, the commercial vehicle remained in continuous operation, leaving

Plaintiff with little opportunity during the workweek to conduct personal, financial, or legal affairs.

128. Prior to the events giving rise to this action, Plaintiff sold her travel trailer and, during her weekly home time, stayed with friends and family while searching for and intending to purchase a replacement Class B RV.

129. Plaintiff entered the transaction intending to purchase that RV as reliable transportation and affordable lodging during her home time, allowing Plaintiff to maintain her employment while minimizing living expenses.

130. In addition to supporting herself, Plaintiff provides ongoing financial assistance and care to her elderly mother and financial assistance to her indigent sister.

131. Defendant's conduct substantially impaired Plaintiff's ability to meet those obligations and significantly increased the financial hardship imposed upon Plaintiff and her family.

132. As a result of Defendant's funding and subsequent enforcement of the disputed Retail Installment Contract, Plaintiff was deprived of the use of her $9,200 down payment and lost the opportunity to purchase the replacement Class B RV she had planned and prepared to acquire.

133. Because Defendant's conduct prevented Plaintiff from obtaining the replacement RV that was intended to serve as Plaintiff's primary lodging during her weekly home time, Plaintiff was forced to obtain alternative housing, resulting in

substantial rental obligations and related housing expenses in an amount to be proven at trial.

134. Plaintiff was also required to obtain approximately $10,000 in personal loan financing at an interest rate of approximately 14.770% in order to replace funds tied up in the disputed transaction and to meet increased living expenses resulting from Defendant's continued enforcement of the Retail Installment Contract.

135. Plaintiff incurred professional consultation expenses in attempting to resolve the dispute before litigation became necessary, to the extent recoverable under applicable law.

136. Plaintiff further incurred additional reasonable expenses in attempting to mitigate her damages and preserve her legal rights, all in amounts to be proven at trial to the extent recoverable under applicable law.

137. Defendant's continued enforcement of the disputed Retail Installment Contract, together with Defendant's furnishing of adverse credit information concerning Plaintiff, caused Plaintiff's creditworthiness and financial reputation to deteriorate substantially.

138. As a consequence, Plaintiff alleges that multiple credit accounts were closed or otherwise adversely affected, Plaintiff's borrowing capacity was impaired, Plaintiff incurred increased borrowing costs, and Plaintiff's ability to obtain future financing on favorable terms has been substantially diminished.

139. In addition to Plaintiff's economic losses, Defendant's conduct caused significant emotional distress, including prolonged anxiety, insomnia, recurring nightmares, persistent worry concerning Plaintiff's financial security, disruption of Plaintiff's personal and professional life, and continuing emotional suffering associated with Defendant's efforts to enforce a transaction that Plaintiff rejected before Defendant elected to fund it.

140. Defendant's conduct further disrupted Plaintiff's housing arrangements, financial stability, employment, and ability to provide financial assistance and care to members of her immediate family, requiring Plaintiff to expend substantial time, effort, and financial resources attempting to resolve a dispute that Defendant could have avoided by honoring Plaintiff's timely notice of rejection before funding the transaction.

141. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to:

a. Refusing to recognize Plaintiff's timely rejection of the RV;

b. Loss of Plaintiff's $9,200 down payment;

c. Loss of the opportunity to purchase a replacement Class B RV;

d. Increased housing expenses;

e. Increased borrowing costs and financing expenses;

f. Injury to Plaintiff's credit reputation, creditworthiness, and financial standing;

g. Consequential damages according to proof at trial;

h. Emotional distress and other non-economic damages to the extent recoverable under applicable law; and

i. Such additional legal, equitable, and monetary relief as the Court deems just and proper.

# COUNT VI

## DECLARATORY JUDGMENT

## 28 U.S.C. §§ 2201–2202

142. Plaintiff incorporates paragraphs 1-141.

143. An actual and justiciable controversy exists between Plaintiff and Defendant concerning the parties' respective rights and obligations arising from the Retail Installment Contract, Defendant's decision to fund the transaction after receiving notice of Plaintiff's rejection of the underlying sales transaction, Defendant's subsequent repossession of the collateral, and Defendant's assertion that Plaintiff remains liable for an alleged deficiency balance.

144. Before Defendant funded the Retail Installment Contract, Plaintiff repeatedly notified Defendant, both orally and in writing, that Plaintiff rejected acceptance of the RV, returned the vehicle to the selling dealer, and expressly instructed Defendant not to fund the transaction.

145. Defendant nevertheless elected to fund the Retail Installment Contract.

146. Defendant thereafter asserted that Plaintiff remained legally bound by the Retail Installment Contract, repossessed the recreational vehicle, furnished adverse credit information concerning Plaintiff, and asserted that Plaintiff remains liable for an alleged deficiency balance.

147. Defendant continues to maintain that Plaintiff is legally obligated under the Retail Installment Contract, while Plaintiff contends that Defendant's decision to fund the transaction after receiving notice of Plaintiff's rejection and return of the collateral precludes Defendant from enforcing the agreement and recovering any alleged deficiency.

148. The controversy between the parties is real, immediate, and substantial, and is of sufficient immediacy to warrant declaratory relief under 28 U.S.C. §§ 2201–2202.

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment declaring the rights and legal relations of the parties, including, as appropriate under the facts and applicable law:

A. That an actual controversy exists concerning the enforceability of the Retail Installment Contract following Plaintiff's rejection of the underlying sales transaction and Defendant's subsequent funding of the transaction;

B. That Defendant received actual notice of Plaintiff's rejection of the underlying transaction before electing to fund the Retail Installment Contract;

C. That Defendant's rights, if any, to enforce the Retail Installment Contract and to recover any alleged deficiency must be determined in light of Defendant's knowledge of Plaintiff's rejection before funding;

D. That the parties' respective rights and obligations concerning the Retail Installment Contract, repossession of the collateral, and any claimed deficiency be determined by this Court; and

E. That Plaintiff be awarded such further declaratory and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant on all counts;

B. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that:

i. Plaintiff validly revoked acceptance of the RV under Georgia law;

ii. Plaintiff is not obligated under the Retail Installment Contract;

iii. Defendant has no right to enforce the contract or collect any deficiency balance from Plaintiff;

C. Award Plaintiff compensatory damages in an amount to be proven at trial, including but not limited to:

i. Return of Plaintiff's $9,200 down payment;

ii. Damages for credit harm and impairment of creditworthiness;

iii. Emotional distress damages;

iv. Consequential damages resulting from Defendant's conduct;

D. Award Plaintiff statutory damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681n and § 1681o;

E. Award Plaintiff punitive damages for Defendant's willful conduct;

F. Order Defendant to correct all adverse credit reporting and remove all negative information reported to consumer reporting agencies;

G. Award Plaintiff pre-judgment and post-judgment interest at the maximum rate permitted by law;

H. Award Plaintiff reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, § 1681o, and O.C.G.A. § 10-1-399;

I. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Katheryn Mari Wright Date: 7/17/26

Katheryn Mari Wright
Plaintiff, Pro Se
6230 Foxboro Drive, Apartment 104
Chattanooga, TN 37421
470-309-3744
Followupfitness@gmail.com